UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
IBRAHIM B. MUSLIM,

                                      Plaintiff,

                -against-

SAGAMORE CHILDREN'S PSYCHIATRIC CENTER,
NEW YORK STATE OFFICE OF MENTAL HEALTH
AND HYGIENE,

                                 Defendants.
---------------------------------------------------------------------X

**MEMORANDUM & ORDER**
22-cv-07850-JMA-ARL

**FILED**
**CLERK**

12:16 pm, Jul 15, 2024

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

      By complaint, Plaintiff Ibrahim B. Muslim asserts claims of religious-based discrimination under Title VII, 42 U.S.C. § 2000e, et seq., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296.  Plaintiff alleges that—in April 2022—he was removed from consideration for an Office Assistant I position with the New York State Office of Mental Health ("OMH") after he inquired about a medical or religious exemption from the COVID-19 vaccination requirement, which was then in effect for all OMH employees under Part 557 of the New York Code of Rules and Regulations.  OMH, the sole Defendant in this matter,[1] moves pre-answer to dismiss all claims asserted in Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) and the Eleventh Amendment to the Constitution of the United States.  For the below reasons, the Court grants Defendant's motion and dismisses Plaintiff's claims in their entirety without leave to replead.

---

[1]     As Plaintiff acknowledges, Sagamore Children's Psychiatric Center is operated by OMH and is not a separate legal entity.  (See ECF No. 2, ¶ 10 ("Compl.").)

## I.     BACKGROUND[2]

### A.     Factual Background

As asserted in the Complaint and accepted as true solely for purposes of this motion, Plaintiff alleges that he is a "devout Muslim." (Compl. ¶ 13.) Plaintiff alleges that his religious practices include "the Five Pillars of Islam and that his religious beliefs and practices are enumerated in the six pillars of Iman (faith)." (Compl. ¶¶ 14–15.)

To Plaintiff's mind, "[i]mposing the COVID-19 vaccination Mandate is compulsion (via employment), to violate one's Sincerely Held Religious Beliefs in Islam." (Compl. ¶ 19.) He also alleges that "[t]he COVID-19 vaccination Mandate imposes on a Muslim to violate one's belief in Islam and adopt a new practice pertaining to the plague with epidemic (i.e. pandemic, epidemic or plague)." (Id.) And it is Plaintiff's view that "Islam clearly specifies, regarding the plague with epidemic (i.e. pandemic), for a Muslim to continue '… remaining patient and anticipating Allah's reward, while firmly believing that nothing will befall him other than what Allah has preordained for him…' (Sahih AlBukhari)." (Id.)

Plaintiff applied with OMH in April 2022 for the position of Office Assistant I, "a position he was otherwise qualified for." (Compl. ¶ 20.) On April 15, 2022, he was notified that he had been selected for an interview for the position and that the position would require COVID-19 vaccination. (See id. ¶ 21.) Plaintiff had "elect[ed] not to undergo the COVID-19 vaccination." (Id. ¶ 31.) On April 13, 2022, after Plaintiff had applied for the position, he asked whether OMH "permitted medical and/or religious exemptions from the COVID-19 vaccination." (Id. ¶ 22.)

---

[2]     This Opinion draws its facts from Plaintiff's Complaint (ECF No. 2 ("Compl.")), the well-pleaded allegations of which are taken as true for purposes of this Opinion. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). For ease of reference, the Court refers to Defendant's Memorandum of Law in Support of its Motion to Dismiss as "Def. Mot." (ECF No. 14); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss as "Pl. Mot." (ECF No. 15); and to Defendant's Reply in Support of its Motion to Dismiss as "Def. Rep." (ECF No. 16).

Plaintiff was told that no such outright exemptions were available and that a COVID-19 vaccine was a condition of employment.  (See id.)

Plaintiff alleges he then was removed from consideration for the position.  (See id. ¶ 24.) Plaintiff further alleges that he was denied a meaningful opportunity to seek an accommodation for the position.  (See id.)  It is Plaintiff's view that he was and continues to be otherwise qualified for the position of Office Assistant I.  (See id. ¶ 25.)

**B.    Procedural History**

Plaintiff alleges that he filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 22, 2022.  (See Compl. ¶ 6.)  The EEOC issued a right-to-sue letter, which is dated September 22, 2022.  (See id. ¶ 7; see also ECF No. 2-1 ("EEOC Determination and Notice of Rights").)  Plaintiff, however, alleges he did not receive the right-to-sue letter until "on or about September 25, 2022."  (Id.)

On December 25, 2022, Plaintiff filed the instant Complaint.  (See ECF No. 2.)  By letter dated April 14, 2023, Defendant requested a pre-motion conference with respect to Plaintiff's Complaint.  (See ECF No. 8.)  By Order dated June 1, 2023, the Court waived its pre-motion conference requirement and set briefing schedule for Defendant's motion to dismiss.  (See Elec. Order dated June 1, 2023.)  On October 6, 2023, Defendant filed the fully-briefed motion to dismiss in accordance with the Court's Individual Bundling Rule.  (See ECF Nos. 14–16.)

## II.    DISCUSSION

**A.    Applicable Law**

**1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

Defendant argues—among other things—that Plaintiff's claims are inadequately pleaded. "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  <u>Allco Fin. Ltd. v. Klee</u>, 861 F.3d 82, 94–95 (2d Cir. 2017) (quoting <u>Iqbal</u>, 556 U.S. at 678).  "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and citation omitted, and alterations adopted); <u>see also</u> <u>Rolon v. Henneman</u>, 517 F.3d 140, 149 (2d Cir. 2008) (explaining that a court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions") (internal citation omitted).

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials."  <u>Goel v. Bunge, Ltd.</u>, 820 F.3d 554, 559 (2d Cir. 2016).  This narrow universe includes the "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken."  <u>Id.</u> (internal citation omitted and alternations adopted); <u>see also</u> <u>United States ex rel. Foreman v. AECOM</u>, 19 F.4th 85, 106 (2d Cir. 2021).

**B.    <u>Analysis</u>**

Defendant argues that the Court must dismiss Plaintiff's Complaint with prejudice for three reasons.  First, Defendant argues that Plaintiff fails to state a Title VII claim of religious-based discrimination under a disparate treatment or disparate impact theory.  (<u>See</u> Def. Rep. 4–12.)  Second, Defendant argues that Plaintiff's NYSHRL claim is barred by the Eleventh Amendment to the United States Constitution.  (<u>See</u> <u>id.</u> at 12–14.)  Third (and alternatively), Defendant argues that—considering Plaintiff's failure to state a federal claim under Title VII—the Court should

decline to exercise supplemental jurisdiction over his NYSHRL claim.  (See Def. Mot. 12–13.)
The Court addresses the issues raised by Defendant seriatim.

> **1.  Plaintiff Fails to State a Title VII Religious-Based Discrimination Claim Under a Disparate Treatment or Disparate Impact Theory.**

As for Plaintiff's Title VII disparate treatment claim, Defendant argues he fails to state a claim—whether framed as failure-to-hire, failure-to-promote, or failure-to-accommodate—because he fails to allege any facts that could support an inference of discrimination.  (See Def. Mot. 5–10.)  As for Plaintiff's Title VII disparate impact claim, Defendant argues he fails to state a claim because he alleges no facts that could show that there were any other Muslim applicants for the Office Assistant I or any other position, and he alleges no facts that could show that Muslim applicants, if any, were unvaccinated.  (See id. at 10–12.)  For the below reasons, the Court agrees with Defendant on both scores.

> a)  *Plaintiff fails to state a plausible claim of discriminatory failure to hire or failure to promote.*

> (1)  Applicable Law.

Title VII prohibits an "employer" from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2.  In the absence of direct evidence of discrimination, discriminatory failure to hire or failure to promote claims under Title VII are guided by the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this analysis, plaintiff bears the initial burden of establishing a prima facie case of discrimination.  To do so, plaintiff must show "(1) that [he] was within the protected [class], (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Gorzynski v. JetBlue

5

Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010).  "This burden is not a heavy one."  Id.  A plaintiff cannot establish a prima facie case, however, based on "purely conclusory allegations of discrimination, absent any concrete particulars."  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985), cert. denied, 474 U.S. 829 (1985).

If plaintiff can demonstrate a prima facie case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the disparate treatment." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015) (internal quotation marks and citations omitted).  "[I]f the defendant satisfies this burden of production, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for discrimination."  Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996).  A plaintiff is not "required to prove the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision."  Finn v. N.Y. State Off. of Mental Health-Rockland Psychiatric Ctr., No. 08-cv-5142 (VB), 2011 WL 4639827, at *11 (S.D.N.Y. Oct. 6, 2011) (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 78 (2d Cir. 2001)).  Rather, plaintiff "must show that those were not the only reasons and that [the] plaintiff's protected status contributed to the employer's decision."  Id. (citing Holtz, 258 F.3d at 78).

The fourth prong of the McDonnell Douglas test requires plaintiff to plausibly plead "'discriminatory intent.'"[3]  See, e.g., Pattanayak v. Mastercard Inc., No. 21 Civ. 2657, 2022 WL 2003317, at *3 (S.D.N.Y. June 6, 2022), aff'd, No. 22-1411, 2023 WL 2358826 (2d Cir. Mar. 6, 2023) (quoting Littlejohn v. City of N.Y., 795 F.3d 297, 311 (2d Cir. 2015)).  An inference of discriminatory intent may arise if the position for which plaintiff applied "remained open and the

---

[3]       To support an inference of discriminatory intent, a Title VII plaintiff must allege facts supporting his claim that his "race, color, religion, sex, or national origin was a motivating factor in the employment decision" about which he complains.  Vega, 801 F.3d at 87.  A plaintiff may meet this burden either through direct evidence of intent to discriminate or "by indirectly showing circumstances giving rise to an inference of discrimination."  Id.

employer continued to seek applicants having the plaintiff's qualifications," or if "a person, not of the plaintiff's class, was given the position." Butts v. N.Y. City Dep't Of Hous. Pres. And Dev., No. 00-cv-6307, 2007 WL 259937, at *10 (S.D.N.Y. Jan. 29, 2007), aff'd sub nom. Butts v. NYC Dep't of Hous. Pres. & Dev., 307 F. App'x 596 (2d Cir. 2009) (citing de la Cruz v. N.Y. City Hum. Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 20 (2d Cir. 1996)).

(2)   Analysis.

Here, Plaintiff cannot demonstrate a prima facie case on his Title VII failure-to-hire or failure-to-promote claim because he fails to allege any facts in support of an inference of discriminatory intent.  For example, Plaintiff fails to allege, as he is required to do, that either: (1) the Office Assistant I position for which he applied remained open and OMH continued to seek similarly qualified applicants outside of Plaintiff's protected class, or (2) a person outside Plaintiff's protected class was hired for the position.  See Butts, 2007 WL 259937, at *10 (an inference of discriminatory intent may arise if the position for which the plaintiff applied "remained open and the employer continued to seek applicants having the plaintiff's qualifications," or if "a person, not of the plaintiff's, class was given the position").  Plaintiff merely alleges that non-Muslim applicants "were nonetheless found qualified for the position that they had applied and/or hired," (Compl. ¶ 33), and he argues that his "assertion that non-Muslim applicants were found qualified or hired provides a comparative backdrop."  (Pl. Mem. 9 (citing Compl. ¶ 33).)  This argument merely reinforces that Plaintiff has not satisfied the pleading standard to raise an inference of intentional discrimination.  See Butts, 2007 WL 259937, at *10. The Complaint remains devoid of allegations either that the Office Assistant I position remained open while OMH sought similarly qualified candidates outside of Plaintiff's protected group, or that any non-Muslim applicant was hired for the Office Assistant I position.  This pleading failure is fatal to Plaintiff's failure-to-hire and failure-to-promote claims.

7

In addition, Plaintiff's failure to plead that OMH knew of his religious affiliation defeats any inference of discriminatory intent.  See Lam v. Park Ambulance Serv., No. 15-cv-5785, 2017 WL 1025847, at *3 (E.D.N.Y. Mar. 13, 2017) ("Plaintiff fails to allege that [defendant] was aware of his race or that he informed her of it. Therefore, the Court cannot infer racial bias from [defendant's] actions.") (citing Littlejohn, 795 F.3d at 303–06, 312).  Plaintiff argues that when he wanted to know whether OMH permitted "medical and/or religious exemptions from the COVID-19 vaccination," (Compl. ¶ 22,) OMH should have inferred that Plaintiff was seeking a religious—rather than a medical—exemption, and further inferred his religious affiliation.  (Pl. Mot. 3, 8–9.) This is insufficient to satisfy the pleading standard.  See Marte v. Montefiore Med. Ctr., No. 22-cv-03491, 2022 WL 7059182, at *4 (S.D.N.Y. Oct. 12, 2022) (finding plaintiff failed to inform employer of religious object to vaccine requirement where she "told her employer she did not want the vaccine and asked for a reasonable accommodation as defined by law" (internal quotation marks omitted)).

Plaintiff refers to the temporal proximity between his inquiry about a religious or medical exemption from the vaccine requirement and the alleged "adverse action," (Pl. Mot. 8), but temporal proximity has no relevance here.  Temporal proximity is a consideration in examining a retaliation claim, which is not asserted here, not a disparate treatment claim.  This is clear from Butts, 2007 WL 259937, cited by Plaintiff, which refers to temporal proximity in the context of examining the plaintiff's retaliation claims.  See id. at *16–*18.  And temporal proximity is even less meaningful here, where it is unclear from the allegations that Plaintiff requested a religious rather than medical, exemption.  In any event, as explained above, Plaintiff pleads no facts upon which an inference of religious-based discriminatory intent could be based for his failure-to-hire and failure-to-promote claims.  Accordingly, the Court dismisses Plaintiff's failure-to-hire and failure-to-promote claims for failure to state a claim.

> b)   *Plaintiff fails to state a plausible claim of discriminatory failure to provide a reasonable accommodation.*

> (1)   Applicable Law.

"Title VII ... requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" Groff v. DeJoy, 600 U.S. 447, 453 143 S. Ct. 2279, 216 L.Ed.2d 1041 (2023) (quoting 42 U.S.C. § 2000e(j)).  A prima facie Title VII claim of discrimination based on a failure to accommodate a religious belief requires a plausible allegation that (1) plaintiff held "a bona fide religious belief conflicting with an employment requirement;" (2) plaintiff "informed [the] employer of this belief;" and (3) plaintiff suffered an adverse action "for failure to comply with the conflicting employment requirement."  Marte, 2022 WL 7059182, at *3 (citing Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001)).  "If a plaintiff can make out a prima facie case, then the employer is required to show that it offered her a reasonable accommodation or that doing so would cause undue hardship."  Id. (citing Baker v. The Home Depot, 445 F.3d 541, 546 (2d Cir. 2006)).  Although undue hardship is an affirmative defense, it "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) ... if the defense appears on the face of the complaint." Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd., 620 F.3d 137, 145 (2d Cir. 2010).

> (2)   Analysis.

Here, Plaintiff fails to demonstrate a prima facie case because fails to plead the first and second elements of his Title VII failure-to-accommodate claim.

Plaintiff fails to satisfy the second element of his claim because he does not plead that he informed OMH of his claimed religious belief.  Rather, he merely pleads that he inquired into "whether [OMH] permitted medical and/or religious exemptions from the COVID-19 vaccine." (Compl. ¶ 22.)  As stated above, see supra, Section II.B.1.a, OMH cannot be expected to speculate

9

on whether Plaintiff was inquiring about a religious exemption or a medical exemption.  Plaintiff's argument that OMH should have inferred that Plaintiff was requesting an accommodation based on his religious belief does not overcome his pleading failure.  See Marte, 2022 WL 7059182, at *4 ("Defendant could not have discriminated against Plaintiff on the basis of her religious beliefs if Defendant was unaware of those beliefs; the second requirement of a prima facie case is that the employee must make her employer aware that there was a conflict between her religious belief and the employment requirement. As Plaintiff fails to plead that she told her employer that she had conflicting religious beliefs, she has failed to plead a viable claim for religious discrimination.") (citing Knight, 275 F.3d at 167).

In addition, Plaintiff fails to satisfy the first element of his claim because he does not plead that he "held a bona fide religious belief conflicting with an employment requirement."  Adams v. N.Y.S. Unified Ct. Sys., No. 22-cv-9739, 2023 WL 5003593, at *2 (S.D.N.Y. Aug. 4, 2023) (citing Baker, 445 F.3d at 546).  Plaintiff asserts that the vaccination mandate "imposes belief and practice" contrary to his beliefs, but he does not allege that any of the teachings of Islam he cites actually prohibits the COVID-19 vaccine.  (Compl ¶ 19.)  Plaintiff alleges only that his faith instructs him to "continue '. . . remaining patient and anticipating Allah's reward, while firmly believing that nothing will befall him other than what Allah has preordained for him…'"  (Id. (quoting Sahih Al-Bukhari).)  Plaintiff may have a personal religious belief—or a belief based on his personal interpretation of his faith—that forbids vaccination, but that is not what he alleges in the Complaint.  Plaintiff premises his objections to the COVID-19 vaccine requirement solely on the religious teaching he cites, but he fails to plead that any of those teachings actually forbids vaccination.  Accordingly, Plaintiff's vague and unsupported statements related to his religious beliefs are insufficient to plausibly allege that he had a bona fide religious belief that conflicted with the COVID-19 vaccine requirement.  See Mason v. General Brown Cent. Sch. Dist., 851 F.2d

47, 51–52 (2d Cir. 1988) (holding that an individual's conviction, even if sincere and strong, does not "automatically mean that the belief is religious"); see also Cagle v. Weill Cornell Med., 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023) ("Bald allegations that a plaintiff has a religious belief and that those religious beliefs conflict with an employment requirement are insufficient to state a claim for religious discrimination under Title VII.") (citations omitted)); Sherr v. Northport-East Northport Union Free Sch. Dist., 672 F. Supp. 81, 94 (E.D.N.Y. 1987) (holding that a plaintiff must show that its "espoused beliefs ... do in fact stem from religious convictions and have not merely been framed in terms of religious belief so as to gain the legal remedy desired").

Even if the Court assumed arguendo that Plaintiff demonstrates a prima facie case, Defendant carries its burden of showing that accommodating Plaintiff's religious beliefs "would cause undue hardship" to OHM. Marte, 2022 WL 7059182, at *3; see also Baker, 445 F.3d at 546 (holding that a defendant bears the burden to show that it could not accommodate a plaintiff's religious beliefs without suffering an "undue hardship"). The Supreme Court recently clarified that undue hardship is "shown when a burden is substantial in the overall context of an employer's business." Groff, 600 U.S. at 468 (rejecting the "more than de minimis" standard derived from Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977)); see also D'Cunha v. Northwell Health Sys., No. 23-476-CV, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (acknowledging this change to the standard for evaluating an employer's "undue hardship" with respect to a requested religious accommodation); Cagle, 680 F. Supp. 3d at 436 n.2 (same).

Plaintiff does not allege that he inquired about a reasonable accommodation during the application process; rather, he alleges only that he requested a blanket exemption to the vaccine mandate. (See Compl. ¶ 22). This, in the Court's view, "would cause undue hardship" as a matter of law. Marte, 2022 WL 7059182, at *3. To begin with, the conflicting employment requirement, OMH's vaccine mandate, set forth in Part 557 of the New York Code of Rules and Regulations

11

(N.Y.C.R.R.), was a "lawful condition of employment." Broecker v. N.Y. City Dep't of Educ., 585 F. Supp. 3d 299, 314-15 (E.D.N.Y. 2022) ("Recent case law from this Circuit and in the State of New York supports a finding that vaccination is a lawful condition of employment."); cf. We The Patriots USA, Inc. v. Hochul (We The Patriots I), 17 F.4th 266, 287 (2d Cir. 2021), opinion clarified (We the Patriots II), 17 F.4th 368 (2d Cir. 2021) (per curiam), cert. denied sub nom. Dr. A. v. Hochul, 142 S. Ct. 2569 (2022) (New York has long "required vaccination of all medically eligible employees and treated the requirement as a condition of employment in the healthcare arena"). Sagamore Children's Psychiatric Center, where Plaintiff sought employment, (see Compl. ¶¶ 11, 20), is a "hospital" under New York's Mental Hygiene Law ("NYMHL"), see NYMHL § 7.17(b); see also 14 N.Y.C.R.R. § 557.4(d).  OMH's COVID-19 vaccine mandate applied to hospitals.  See 14 N.Y.C.R.R. § 557.5(a) ("Hospitals . . . shall require Staff to be fully vaccinated."); id. § 557.5(b) ("New Staff shall not commence their duties until they have been Fully Vaccinated.").  And OMH's vaccine mandate applied to all hospital staff, which necessarily includes those employed in the Office Assistant I position.  See 14 N.Y.C.R.R. § 557.4(f) ("Staff shall mean all persons employed or affiliated with a Hospital . . . .").

Courts have consistently ruled that vaccine mandates for hospital workers that are nearly identical in substance to that promulgated by OMH for COVID-19 are a permissible condition of employment.[4]   See We The Patriots I, 17 F.4th at 287 ("[F]or decades, those charged with protecting the public health against infectious disease in New York State have required vaccination of all medically eligible employees and treated the requirement as a condition of employment in

---

[4]      We the Patriots involved a vaccine mandate issued by the New York State Department of Health (10 N.Y.C.R.R. § 2.61) that, like OMH's mandate (see N.Y.C.R.R. §§ 557.4, 557.5), applied to hospital personnel.  Id. at 272 (examining motion for injunction "that would restrain the State from enforcing its emergency rule requiring healthcare facilities to ensure that certain employees are vaccinated against COVID-19").  Although Section 2.61 was repealed effective October 4, 2023, see Vol. XLV, Issue 40 N.Y. Reg. 22 (Oct. 4, 2023), "[t]he fact that the State Mandate was repealed in October 2023 does not change [the] analysis in the present case ...."  D'Cunha, 2023 WL 7986441, at *3.

the healthcare arena."). And case law has also established that Title VII does not require the granting of blanket exemptions to vaccine mandates, like OMH's COVID-19 vaccine mandate, for hospital employees. See id. at 292; see also Cagle, 680 F. Supp. 3d at 436 ("A long line of cases in the Southern and Eastern Districts of New York have … uniformly rejected claims that an employer is required by Title VII to accommodate a request for a religious exemption from [the New York State Department of Health vaccine] Mandate at the cost of violating [10 N.Y.C.R.R. § 2.61] and thus New York law.") (internal citations omitted). Granting an unconditional, blanket exemption to the COVID-19 vaccine mandate to a hospital employee would, as a matter of law, present an undue hardship on OHM.[5] See, e.g., Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C., No. 22-cv-2929, 2023 WL 3467143, at *5, *7 (S.D.N.Y. May 15, 2023) (blanket exemption from COVID-19 mandate for hospital personnel creates undue hardship by requiring hospital to violate state law and by risking health and safety of patients and other employees) (collecting cases); see also Pastor v. Mercy Med. Ctr., 2024 WL 3029118, at *5 (E.D.N.Y. June 17, 2024) (same) (collecting cases).

For the above reasons, Plaintiff's Title VII failure to accommodate claim is dismissed for failing to state a claim.

> c)   *Plaintiff fails to state a plausible disparate-impact claim.*

> (1)   Applicable Law.

As originally enacted, "Title VII's principal nondiscrimination provision held employers liable only for" intentional discrimination (known as "disparate treatment"). Ricci v. DeStefano, 557 U.S. 557, 577 (2009). But in Griggs v. Duke Power Co., the Supreme Court construed the

---

[5]     Plaintiff's assertion that Defendant was required to engage in an interactive process with Plaintiff "to determine an appropriate accommodation," (Pl. Mot. 10), ignores the fact that, according to the Complaint, Plaintiff never requested an accommodation, but rather he requested an unconditional exemption COVID-19 vaccine mandate, which, whether based on religious belief or medical need, would be patently unreasonable as a matter of law.

statute to prohibit "not only overt discrimination but also practices that are fair in form, but discriminatory in operation"—that is, practices that have a "disparate impact."  401 U.S. 424, 431 (1971).  Griggs thus read Title VII to focus on "the consequences of employment practices, not simply the motivation" behind them.  Id. at 432; see also M.O.C.H.A. Soc'y, Inc. v. City of Buffalo, 689 F.3d 263, 273 (2d Cir. 2012); Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 382 (2d Cir. 2006).

"Pursuing a disparate impact claim is often a complicated endeavor."  Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020).  Such claims "follow a three-part analysis involving shifting evidentiary burdens."  Gulino, 460 F.3d at 382 (citing 42 U.S.C. § 2000e–2(k)(1)).  The plaintiff "bears the initial burden of [making] a prima facie showing of disparate impact."  Id.  This requires the plaintiff to "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two."[6]  Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 151 (2d Cir. 2012) (internal quotation marks and citations omitted).  The plaintiff "must at least set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim."  Mandala, 975 F.3d at 209.  While a plaintiff need not present statistical evidence at the pleading stage, the plaintiff must allege "statistics [that] plausibly suggest that the challenged practice actually has a disparate impact."  Id. (emphasis in original).

If a prima facie showing is made, "the defendant has two avenues of rebuttal."  Gulino, 460 F.3d at 382.  One approach is to undermine the plaintiff's disparate impact or causal analysis.  See id.; see also Watson v. Fort Worth Bank & Tr., 487 U.S. 977, 996, 108 (1988).  If the defendant

---

[6]        "Unlike a disparate treatment claim, however, a disparate impact claim does not require the plaintiff to show that the defendant intended to discriminate against a particular group."  Mandala, 975 F.3d at 207 (citing Ricci, 557 U.S. at 577–78).

is able to do so, "that ends the matter." Mandala, 975 F.3d at 208. Alternatively, the defendant can concede that the identified policy has a disparate impact, but still defend it as "job related for the position in question and consistent with business necessity." Ricci, 557 U.S. at 578 (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i)); see also Gulino, 460 F.3d at 382.

"Should the defendant succeed in demonstrating the business necessity of the challenged policy, the burden then shifts back to the plaintiff, who has one last chance to prove [his] case." Mandala, 975 F.3d at 208. Namely, he must show that other methods exist to further the defendant's legitimate business interest "without a similarly undesirable racial effect." M.O.C.H.A., 689 F.3d at 274 (quoting Watson, 487 U.S. at 998); see Gulino, 460 F.3d at 382.

(2)     Analysis.

Here, Plaintiff does not demonstrate a prima facie case of disparate impact because he asserts—in a purely conclusory manner—that the vaccination requirement "serve[s] as a de facto barrier to Muslim applicants being successfully hired for the position for which they qualify and applied." (Compl. ¶ 43.) This pleading is fatal to Plaintiff's claim because it fails to satisfy the pleading standard for the second and third elements of a disparate impact claim under Title VII.[7]

As for the second element, Plaintiff does not sufficiently plead that a disparity exists between Muslim applicants and non-Muslim applicants for the Office Assistant I position or any other position. This is true for two reasons.

First, Plaintiff does not allege that there were any Muslim applicants aside from himself for the Office Assistant I position or any other position. Plaintiff merely refers to the "Muslim applicant pool." (Compl. ¶ 43.) Plaintiff does not allege that anyone from that applicant pool in fact applied for the Office I position. Plaintiff does, however, argue that his reference in the

---

[7]     Any need to examine the third element, causation, is obviated by Plaintiff's failure to plead that the vaccine requirement creates an actual disparity between Muslim and non-Muslim applicants. Therefore, the Court will not address the third element.

Complaint to the "Muslim applicant pool" is sufficient to state a disparate-impact claim.  (See Pl. Mot. 11.)  Plaintiff is mistaken.  As mentioned, a plaintiff asserting a disparate impact claim must include some statistical analysis at the pleading stage to plausibly allege the existence of the claimed disparate impact—i.e., that the plaintiff's protected group was in fact disparately impacted by the challenged neutral practice.  See Mandala, 975 F.3d at 209.  Although courts "do not expect a complaint to supplement its statistical analysis with corroborating evidence, … the statistics must plausibly suggest that the challenged practice actually has a disparate impact."  Id. at 210 (emphasis in original).  Even at the pleading stage, "the statistical analysis must, at the very least, focus on the disparity between appropriate comparator groups" or "reveal disparities between populations that are relevant to the claim the plaintiff seeks to prove."  Id.

Plaintiff's allegations are far from meeting this pleading standard.  Plaintiff does not even allege that there were other Muslim applicants to the Office Assistant I position, that those applicants, if any, requested an exemption from the COVID-19 vaccine mandate, or that those applicants, if any, were denied the position.  Plaintiff fails to assert even the most rudimentary statistical analysis, (see Compl. ¶¶ 43, 44), and thereby fails to state a plausible disparate-impact claim.

Second, even if Plaintiff had plausibly alleged the existence of other Muslim applicants, which he does not, Plaintiff fails to allege that other Muslim applicants, if any, were unvaccinated. The religious teachings that Plaintiff cites do not support an inference that other Muslim applicants were unvaccinated because those teachings do not contain any doctrinal prohibition against vaccination.  (See supra, Section II.B.1.b.; see also Compl. ¶ 19.) Plaintiff provides no support, therefore, for an inference that other Muslim applicants, if any, were unvaccinated.

16

Accordingly, Plaintiff fails to state a plausible claim for relief on his Title VII disparate impact claim.[8]

### 2.      Plaintiff's NYSHRL Claim is Barred by the Eleventh Amendment.

Defendant next argues that Plaintiff's NYSHRL claim is barred by the Eleventh Amendment to the United States Constitution.  (See Def. Mot. 14–15.)  The Court agrees again.

### (1)            Applicable Law.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST., amend. XI.  The Amendment is "'rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity,'"  Hess v. Port Auth. Trans–Hudson Corp., 513 U.S. 30, 39 (1994) (quoting Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993)), and "'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without [the sovereign's] consent,'" Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996) (quoting Hans v. Louisiana, 134 U.S. 1, 13 (1890)) (emphasis removed).  Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens, see Hans, 134 U.S. at 15, as well as state court actions against state governments, see Alden v. Maine, 527 U.S. 706, 712 (1999). While Congress may abrogate the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment, see U.S. CONST., amend. XIV, § 5; see

---

[8]      It bears mentioning that Plaintiff further asserts that OMH's hiring practices subjected Muslim applicants to a "more rigorous and higher scrutinized hiring process than non-Muslim applicants."  (Comp. ¶ 44.)  This argument is patently implausible.  The vaccination requirement is, as demonstrated in the Complaint, equally applicable to all job seekers at OMH.  (See, e.g., Compl. ¶¶ 21, 22.)

also Tennessee v. Lane, 541 U.S. 509, 518 (2004), generally, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, see Lapides v. Bd. of Regents, 535 U.S. 613, 618–19 (2002).

The immunity recognized by the Eleventh Amendment extends beyond the states themselves to "state agents and state instrumentalities" that are, effectively, arms of a state. Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); see also McGinty v. New York, 251 F.3d 84, 95 (2d Cir. 2001); Davis v. Proud, 2 F. Supp. 3d 460, 476–77 (E.D.N.Y. 2014) ("Absent consent, the Eleventh Amendment to the United States Constitution bars suits in federal court by private parties against a State, one of its agencies or departments or a state official acting in his or her official capacity.") (citing California v. Deep Sea Rsch., Inc., 523 U.S. 491, 502 (1998) ("[A] state official is immune from suit in federal court for actions taken in an official capacity." (citation omitted)); Puerto Rico Aqueduct, 506 U.S. at 144 ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." (quotations and citation omitted)); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.")).

(2)          Analysis.

Courts in this Circuit have repeatedly stated that OMH is an agency of New York State, and the Court sees no reason to disagree with those rulings.  See, e.g., Babcock v. N.Y. State Off. of Mental Health, No. 04-cv-2261, 2009 WL 1598796, at *26 (S.D.N.Y. June 8, 2009) ("Defendant OMH is an agency of the state, created by statute, through which state policies are implemented …." (internal quotation marks omitted) (citing NYMHL §§ 7.01, 7.07, 7.17)); see also Lewis v. Huebner, 2020 WL 1244254, at *4 (S.D.N.Y. Mar. 16, 2020) ("OMH [is] an agency of New York State."); Henny v. New York State, 842 F. Supp. 2d 530, 544 (S.D.N.Y. 2012) ("New York State

18

Office of Mental Health [is an] agent[] and instrumentalit[y] of New York State."); <u>Vallen v. Mid-Hudson Forensic Office of Mental Health</u>, Case No. 02-cv-5666 (PKC), 2004 WL 1948756, at *3 (S.D.N.Y. Sep. 2, 2004) ("OMH is an agency of the state, created by statute, through which state policies are implemented."); <u>Greenwood v. State of N.Y.</u>, 939 F. Supp. 1060, 1064–65 (S.D.N.Y. 1996) <u>aff'd</u> <u>in part and vacated in part</u>, 163 F.3d 119, 120 n.1 (2d Cir. 1998) (same); <u>Kirwin v. N.Y. State Off. of Mental Health</u>, 665 F. Supp. 1034, 1037 (E.D.N.Y. 1987) ("Therefore, plaintiff's Section 1983 claims against OMH are barred by the Eleventh Amendment.").  OMH is therefore entitled to Eleventh Amendment immunity.  <u>See</u> <u>Avni v. Pilgrim Psychiatric Ctr.</u>, No. 05-cv-5346, 2006 WL 2505241, at *4 (E.D.N.Y. Aug. 28, 2006) ("Eleventh Amendment immunity also shields arms of the state, like a state agency.") (citing <u>Mancuso v. N.Y. State Thruway Auth.</u>, 86 F.3d 289, 292 (2d Cir. 1996)).

In addition, New York State has not waived its sovereign immunity and has not consented to suit in federal court under the NYSHRL.  <u>See, e.g.</u>, <u>DeFigueroa v. N.Y.</u>, 403 F. Supp. 3d 133, 151 (E.D.N.Y. 2019) (dismissing NYSHRL claims against the State and against SUNY based on Eleventh Amendment); <u>Babcock</u>, 2009 WL 1598796, at * 26 ("Nothing in [the NYSHRL] provides any basis for finding that New York State has waived its Eleventh Amendment immunity." (internal quotation marks and alterations omitted)).

Moreover, 28 U.S.C. § 1367 provides no exception to Eleventh Amendment immunity. "Supplemental jurisdiction under 28 U.S.C. § 1367(a) does not constitute a congressional abrogation of the Eleventh Amendment granting district courts the power to adjudicate pendent state law claims."  <u>Fanelli v. N.Y.</u>, 51 F. Supp. 3d 219, 232 (E.D.N.Y. 2014) (finding Eleventh Amendment immunity bars NYSHRL claim that was "based on the same allegations that underlie [the plaintiff's] Title VII claims"); <u>see also</u> <u>Iwachiw v. NYC Bd. of Elections</u>, 217 F. Supp. 2d 374, 380 (E.D.N.Y. 2002), <u>aff'd sub nom.</u> <u>Iwachiw v. N.Y. City Bd. of Elections</u>, 126 F. App'x 27 (2d

19

Cir. 2005) ("Supplemental jurisdiction under 28 U.S.C. § 1367(a) does not constitute a congressional abrogation of the Eleventh Amendment granting district courts the power to adjudicate pendent state law claims.") (citing Raygor v. Regents of the Univ. of Minn., 534 US 533 (2002)).

Plaintiff concedes that 28 U.S.C. § 1367 provides no exception to Eleventh Amendment immunity.  (See Pl. Mot. 15.)  Plaintiff instead mistakenly relies on the exception set forth in Ex Parte Young, 209 U.S. 123 (1908), which recognizes that a state official may be sued in his or her official capacity for prospective injunctive relief.  (See id. at 14 (citing Ex Parte Young, 209 U.S. 123 (1908)).  But Plaintiff merely states that "[i]f Plaintiff's NYSHRL claim seeks such relief, the Eleventh Amendment may not bar the claim."  (Id.)  Plaintiff's hypothetical claim for relief is easily resolved.  Ex Parte Young does not apply here because Plaintiff sues a state agency, not a state official.  (See Compl. at Caption, ¶ 11.)  And Plaintiff does not seek any form of prospective injunctive relief.  (See Compl. at Relief Requested.)

Plaintiff also incorrectly asserts that an issue of fact exists as to whether OMH is an arm of New York State.  (See Pl. Mot. 15.)  Contrary to Plaintiff's assertion, there is no valid dispute that "Defendant OMH is an agency of the state, created by statute, through which state policies are implemented . . . ."  Babcock, 2009 WL 1598796, at *26 (internal quotation marks omitted) (citing NYMHL §§ 7.01, 7.07, 7.17); see also Hubner, 2020 WL 1244254, at *4 ("OMH [is] an agency of New York State."); Henny, 842 F.Supp.2d at 544 ("New York State Office of Mental Health [is an] agent[] and instrumentalit[y] of New York State."); Vallen, 2004 WL 1948756, at *3 ("OMH is an agency of the state, created by statute, through which state policies are implemented."); Greenwood, 939 F. Supp. at 1064–65 (S.D.N.Y. 1996) aff'd in part and vacated in part, 163 F.3d 119, 120 n.1 (2d Cir. 1998) (same); Kirwin, 665 F. Supp. at 1037  ("Therefore, plaintiff's Section 1983 claims against [OMH] are barred by the Eleventh Amendment.").

Plaintiff also appears to argue that the State of New York may have implicitly waived Eleventh Amendment immunity in federal court by entertaining NYSHRL claims in state court. (See Pl. Mot. 15.)  This argument is wrong in all respects.  First, whether the State has entertained NYSHRL claims in state court is irrelevant here: "a State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court."  Sossamon v. Tex., 563 U.S. 277, 285 (2011).  In addition, a state's waiver of sovereign immunity "may not be implied."  Id. at 284.  Instead, any such waiver must be express and unequivocal.  See Pennhurst State Sch. & Hosp., 465 U.S. at 99 (explaining that "a State may consent to suit against it in federal court," but "the State's consent be unequivocally expressed" (internal citation omitted)).  In any event, it is well established that "[t]he State of New York has not consented to suit in federal court through NYSHRL . . . ."  Jackson v. N.Y.S. Dep't of Lab., 709 F. Supp. 2d 218, 226 (S.D.N.Y. 2010) (citing Cajuste v. Lechworth Developmental Disabilities Serv., No. 03-cv-0161, 2005 WL 22863, at *3 (S.D.N.Y. Jan. 4, 2005) (collecting cases)).

For all these reasons, there is no basis for Plaintiff's request that he be given an opportunity to develop a record to determine whether Eleventh Amendment immunity applies to his NYSHRL claim.  (See Pl. Mot. 15.)  Eleventh Amendment immunity bars Plaintiff's NYSHRL claim as a matter of law.  See, e.g., Hauff v. State Univ. of N.Y., 425 F. Supp. 3d 116, 129 (E.D.N.Y. 2019) (holding that NYSHRL claims "are barred by sovereign immunity and must be dismissed").

### 3.    The Court Need Not Decide Whether to Exercise Supplemental Jurisdiction Over Plaintiff's NYSHRL Claim.

Defendant argues in the alternative—in the event the Court concludes Plaintiff's NYSHRL claim is not barred by the Eleventh Amendment—that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claim.  (See Def. Rep. 12 n.4.)  The Court need not consider the issue because, as explained supra, Section II.B.2, Plaintiff's NYSHRL claim is barred by the Eleventh Amendment.  Even if the Eleventh Amendment did not bar Plaintiff's

NYSHRL claim, which it does, the Court would decline to exercise supplemental jurisdiction over the remaining state-law claim.

a)    <em>Applicable Law.</em>

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see generally Montefiore Med. Ctr. v. Teamsters Loc. 272, 642 F.3d 321, 332 (2d Cir. 2011). To be related, the "federal claim and state claim must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" Montefiore Med. Ctr., 642 F.3d at 332 (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)).

That said, supplemental jurisdiction is not mandatory, and courts should, under certain circumstances, "decline to exercise supplemental jurisdiction over a claim." 28 U.S.C. § 1367(c). These circumstances include instances where "the claim raises a novel or complex issue of State law," id. § 1367(c)(1); "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," id. § 1367(c)(2); "the district court has dismissed all claims over which it has original jurisdiction," id. § 1367(c)(3); or "exceptional circumstances" exist such that "there are other compelling reasons for declining jurisdiction," id. § 1367(c)(4). Should a court find that any of these categories is implicated, it must "balance the values of judicial economy, convenience, fairness, and comity"—the "Cohill factors"—in determining whether to exercise jurisdiction. Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). In weighing these values, courts look to "the circumstances of [each] particular case." City of Chicago v. Int'l

22

Coll. of Surgeons, 522 U.S. 156, 173 (1997).  In general, though, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." United Mine Workers of Am., 383 U.S. at 726.  Moreover, "[a]lthough the exercise of supplemental jurisdiction is discretionary, the ordinary case 'will point toward declining jurisdiction over the remaining state-law claims.'" Jordan v. Chase Manhattan Bank, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) (quoting In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998)).  In the end, the decision whether to exercise supplemental jurisdiction is entirely within the court's "discretion[ ] and [is] not a litigant's right."  Klein & Co. Futures, Inc., 464 F.3d at 263.

      b)    *Analysis.*

The statutory exemption of § 1367(c)(3) applies because the Court dismisses every federal claim brought against Defendant in this case.  28 U.S.C. § 1367(c)(3) ("[T]he district court has dismissed all claims over which it has original jurisdiction.")  Having found that 28 U.S.C. § 1367(c)(3) applies to the facts at hand, the Court considers "the familiar factors of judicial economy, convenience, fairness, and comity."  Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 81 (2d Cir. 2018).  In doing so, the Court would find the factors taken together weigh decidedly against the Court exercising supplemental jurisdiction, and in favor of the resolution of the NYSHRL claim by the appropriate state court.  The Second Circuit has recognized that, where federal claims are dismissed before trial, "the balance of factors to be considered," which include "judicial economy, convenience, fairness and comity," "will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (internal quotations and citation omitted).  The Second Circuit "has [also] held, as a general proposition, that if [all] federal claims are dismissed before trial …, the state claims should be dismissed as well." Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004) (internal quotation marks omitted, emphasis and alternations in origional).

23

Indeed, courts regularly dismiss state-law claims once a motion for summary judgment disposes of all federal claims.  See, e.g., Cohill, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered … will point toward declining to exercise jurisdiction over the remaining state-law claims."); Brannon v. Delta Airlines, Inc., 434 F. Supp. 3d 124, 141 (S.D.N.Y. 2020) ("When a plaintiff's federal claims are dismissed before trial, including on a motion for summary judgment, it is often appropriate to dismiss the state claims as well." (citing Morton v. County of Erie, 796 F. App'x 40, 44 (2d Cir. 2019); Francis v. Chem. Banking Corp., 213 F.3d 626 (2d Cir. 2000)); Krumholz v. Vill. of Northport, 873 F. Supp. 2d 481, 492 (E.D.N.Y. 2012) ("[H]aving determined that plaintiff's federal claim against the defendant does not survive the defendant's motion for summary judgment, the Court concludes that retaining jurisdiction over any of the remaining state law claims is unwarranted.").

There would be no reason to depart from this norm in this case.  Indeed, if courts routinely dismiss state-law claims upon dismissal of all federal claims at summary judgment, that provides even more support for declining to exercise supplement jurisdiction at this initial pleading stage.  Accordingly, the Court would decline to accept supplemental jurisdiction over the NYSHRL claims even it had to consider the issue.

**4.      Leave to Amend.**

The remaining question is whether Plaintiff shall be given leave to replead.  It is true that, in general, courts should "freely give leave" to amend pleadings "when justice so requires."  FED. R. CIV. P. 15(a)(2).  That said, the Second Circuit has repeatedly instructed that "no court can be said to have erred in failing to grant a request that was not made."  Hu v. City of N.Y., 927 F.3d 81, 107 (2d Cir. 2019); see also Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (same); Horoshko v. Citibank, N.A., 373 F.3d 248, 249–50 (2d Cir. 2004) ("[The] contention that the

District Court abused its discretion in not permitting an amendment that was never requested is frivolous."); <u>Anatian v. Coutts Bank (Switzerland) Ltd.</u>, 193 F.3d 85, 89 (2d Cir. 1999) ("[W]e will not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought" (internal quotation omitted)).   Here, Plaintiff is represented by counsel. Plaintiff's counsel incorporates zero reference to amending the Complaint: he neither cross-moves to amend Plaintiff's Complaint, explicitly requests leave to amend, nor attaches any proposed amendment to his client's opposing papers.   (<u>See generally</u> Pl. Mot.)   For this reason alone, the Court may "declin[e] to <u>sua sponte</u> grant leave to amend." <u>Hu</u>, 927 F.3d at 107.

In addition, this Court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss.   <u>Hutchison v. Deutsche Bank Sec. Inc.</u>, 647 F.3d 479, 491 (2d Cir. 2011).  Here, amendment would be futile because Plaintiff cannot cure the above-described legal deficiencies.   See <u>Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.</u>, No. 22-cv-3085, 2024 WL 168282, at *8 (S.D.N.Y. Jan. 12, 2024) (dismissing Title VII and NYHRL religious discrimination claims with prejudice as futile given the undue hardship the employer would face if it granted plaintiff's requested exemption from Section 2.61); <u>see also</u> <u>Moore v. Montefiore Med. Ctr.</u>, No. 22-cv-10242, 2023 WL 7280476, at *8 (S.D.N.Y. Nov. 3, 2023) (same); <u>accord</u> <u>Kane v. Mount Pleasant Cent. Sch. Dist.</u>, 80 F.4th 101, 107 (2d Cir. 2023); <u>IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp.</u>, 783 F.3d 383, 389 (2d Cir. 2015).

For the above reasons, the Court denies leave to amend the Complaint and dismisses Plaintiff's claims with prejudice.

### III.    CONCLUSION

For the above reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's Complaint (ECF No. 14) and DISMISSES Plaintiff's Complaint in its entirety without leave to

replead.  The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 14, to

enter judgment accordingly, and to close the case.

**SO ORDERED.**

Dated:   July 15, 2024
              Central Islip, New York

_____
/s/ JMA

JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE